## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHRISTOPHER WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | **Civil Action No.  2:13-cv-00124** |
| VS. | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| CORDILLERA COMMUNICATIONS, | § | |
| INC., KVOA COMMUNICATIONS, | § | |
| INC. d/b/a KRIS COMMUNICATIONS | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S OPPOSED MOTION FOR A PROTECTIVE ORDER AND MOTION FOR FOR SANCTIONS AGAINST DEFENDANT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Christopher Williams files this Opposed Motion for a Protective Order and Motion for Sanctions, and shows as follows:

### Introduction

1.      This is a defamation case.  The lawsuit was filed following broadcasts by the defendant in early 2013 that reported that the plaintiff had pled guilty to a crime of a sexual nature and that he had been convicted of a crime of a sexual nature.   The broadcasts are factually false.   The plaintiff has never pled guilty to any crimes of a sexual nature, at all, and has never been convicted of any crimes of a sexual nature, at all,

ever.

2.      This case is set for a jury trial in July 2014.

3.      Late in the day on Friday, February 7, 2014, Defendant KRIS contacted the plaintiff directly to question him about yet another story concerning the same subject matter of the litigation it said it was airing on Sunday, February 9, 2014.   Defendant KRIS is well aware that the plaintiff is represented by counsel in this litigation against Defendant KRIS concerning the same subject matter of the phone call.

4.      Upon learning that the plaintiff had been contacted directly about the story, the plaintiff's counsel sent an e-mail message to opposing counsel objecting to the contact and use of discovery materials in any story to be broadcast by Defendant KRIS. Opposing counsel's response was simply, quoting:    "It is permissible for parties in litigation to communicate directly . . . ."  The plaintiff's counsel is not familiar with this practice.   A true and correct copy of the email message is attached to this motion, identified as Exhibit 1, and adopted and incorporated herein by reference.

5.      Second, and confirmed by the story that was aired on February 9, 2014, the subject matter of the broadcast concerns the same subject matter of the litigation. Defendant KRIS expressly stated in its broadcast that the plaintiff sued Defendant KRIS, as was suspected, that its new broadcast relied on information obtained in the discovery process in this litigation.  The plaintiff believes it is inappropriate for a party in litigation

to obtain confidential information in the discovery process and then publicly broadcast those discovery materials to the general public.  The information would never have been obtained by Defendant KRIS but for the discovery process in the litigation.

6.    The plaintiff also contends that the motivation for Defendant KRIS's latest conduct is to taint the jury pool in this case.    With the trial date approaching, the plaintiff contends that Defendant KRIS is broadcasting stories about the plaintiff on two or three consecutive nights and placing information about its stories, including links to the stories, on Facebook, for the purpose of prejudicing the plaintiff's right to a fair and impartial jury in this community.   There is nothing new in the broadcasts.  There has been no, new development.  The broadcasts are simply a rehash of what Defendant KRIS aired more than 1 year ago that caused this lawsuit be filed, except that it references materials it obtained in discovery.  But there is no, new, news-worthy issue.  Therefore, the plaintiff contends that the only purpose of the newest stories and social media blast is to interfere with the plaintiff's jury trial in July 2014.

### Violation of the Texas Rules of Professional Conduct

7.    First, the plaintiff contends that Defendant KRIS, through its counsel, has violated the Texas Rules of Professional Conduct in at least two respects.

***Pre-Trial Publicity***

8.    First, with respect to the February 2014 broadcasts, the plaintiff contends

3

that Defendant KRIS has violated Rule 3.07 of the Texas Rules of Professional Conduct.

In part, the rule provides as follows:

> (a)   In the course of representing a client, a lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding. *A lawyer shall not counsel or assist another person to make such a statement.*

> (b)   A lawyer ordinarily *will violate paragraph (a), and the likelihood of a violation increases* if the adjudication is ongoing or imminent, by making an extrajudicial statement of the type referred to in that paragraph when the statement refers to:

> > (1)   *the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness*; or the expected testimony of a party or witness;

> > (2)   in a criminal case or proceeding that could result in incarceration, the possibility of a plea of guilty to the offense; *the existence or contents of any confession, admission*, or statement given by a defendant or suspect; or that person's refusal or failure to make a statement;

> > * * * *

> > (4)   any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in incarceration; or

> > (5)   *information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial.*

4

TEXAS RULES OF PROFESSIONAL CONDUCT, Rule 3.07(a)-(b) (emphasis added).

9.      Here, by its broadcasts of February 2014, the plaintiff believes that Defendant KRIS, through its counsel, has violated the letter and spirit of Rule 3.07.  The broadcasts assail the character of the plaintiff, the lead witness in his case, by making extrajudicial statements to the public concerning allegations that the plaintiff has been a suspect in multiple criminal cases involving young women.   None of these allegations would be admissible in evidence.  This is partly because they are only allegations.  If any of the broadcasted allegations concerning the plaintiff had any truth at all, the plaintiff would in prison.   However, the plaintiff has virtually no criminal record.   Thus, the allegations that the plaintiff committed crimes are not admissible in evidence.  Therefore, the extrajudicial statements concerning the plaintiff, while not on the eve of trial, but relatively close, violates Rule 3.07.

10.      Further, because the broadcasts and social media blasts offer nothing new; they are merely a rehash of unproven allegations concerning the plaintiff.   The only, apparent motivation by Defendant KRIS with respect to the broadcasts and social media campaign is to prejudice an impartial trial, which is what, in part, Rule 3.07 seeks to prohibit.  The timing of the broadcasts in juxtaposition with the looming trial date is not coincidental.   Therefore, the plaintiff contends that the repackaged broadcasts and social media blasts were aimed to paint the plaintiff as a criminal and to prejudice his right to a

fair and impartial trial.  Attached to this message, identified as Exhibit 2, is just examples

of Defendant KRIS's social media campaign against the plaintiff.  There is much more.

### *Communication with One Represented by Counsel*

11.    Second, with respect to the February 2014 broadcasts, the plaintiff contends

that Defendant KRIS has violated Rule 4.02 of the Texas Rules of Professional Conduct.

In part, the rule provides as follows:

> (a)  In representing a client, a lawyer *shall not communicate or
> cause or encourage another to communicate about the subject of
> the representation with a person, organization or entity of
> government the lawyer knows to be represented by another
> lawyer regarding that subject*, unless the lawyer has the consent
> of the other lawyer or is authorized by law to do so.

TEXAS RULES OF PROFESSIONAL CONDUCT, Rule 4.02(a) (emphasis added).

12.    Further, the comments to the rule specifically address circumventing the

rule.  The comments provide, in part,

> Paragraph (a) of this Rule is directed *at efforts to circumvent the
> lawyer-client relationship* existing between other persons,
> organizations or entities of government and their respective
> counsel. *It prohibits communications that in form are between a
> lawyer's client and another person, organization or entity of
> government represented by counse*l where, because of the
> lawyer's involvement in devising and controlling their content,
> such communications in substance are between the lawyer and
> the represented person, organization or entity of government.

TEXAS RULES OF PROFESSIONAL CONDUCT, Rule 4.02(a) (Comment 1). (emphasis

added).

6

13.     Here, there can be no genuine debate that the Defendant violated Rule 4.02(a).  This is because there was direct contact by Defendant KRIS with the plaintiff on or about February 7, 2014.  In the broadcast of February 9, 2014, Defendant KRIS even admits that it contacted the plaintiff directly and indicated that he did not provide them any information in response.  Further, in Defendant KRIS's counsel's e-mail response to the plaintiff's objection to the contact, counsel says that the direct contact is not a problem and did nothing to remedy it.  Exhibit 1.

14.     Consequently, Defendant KRIS has violated Rule 4.02.[1]

15.     This Court has inherent power to sanction a party and its attorney.  *In re First City Bancorporation of Texas, Inc.*, 282 F.3d 864, 867 (5th Cir. 2002).  This power can be exercised when a party and/or its attorney engage in conduct that is considered bad faith and/or failure to follow rules.  *See Gomez v. Vernon*, 255 F.3d 1118, 1133-34 (9th Cir. 2001).  It also includes conduct considered to be negligent or reckless with respect to the performance of duties to the court, parties, and opposing counsel.  *See United States v. Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000).

16.     The plaintiff contends that Defendant KRIS and its counsel's respective conduct, outlined above, warrants sanctions under the cited precedent.   At a minimum, Defendant KRIS and its counsel was negligent in its conduct.

---

[1]      Just before this motion was filed on February 11, 2014, Defendant KRIS directly contacted the plaintiff again.  Thus, the harassment of the plaintiff by Defendant KRIS continues.  This is despite the plaintiff's objections to such contact.

17.     The remedy that the plaintiff seeks, at this time, is (1) a directive from this Court that counsel for Defendant KRIS must comply Rule 3.07 and Rule 4.02, (2) a directive that Defendant KRIS and its counsel issue a letter of apology to the plaintiff for its violative conduct, set forth above, (3) a directive that Defendant KRIS publicly retract its offending broadcasts and Facebook posts of February 2014 on five consecutive days at 6:00 p.m. and 10:00 p.m., (4) a directive that Defendant KRIS publicly broadcast for five consecutive days at 6:00 p.m. and 10:00 p.m., and on Facebook, that the allegations against the plaintiff that it broadcast have never been proven, (5) a directive that Defendant KRIS publicly broadcast on five consecutive days at 6:00 p.m. and 10:00 p.m., and on Facebook, that the plaintiff was never charged with any crime when he was 17 years-old, as alleged, that he was never charged with any crime for indecent exposure in 2008, that while charges may have been filed against the plaintiff in 2009, they were dismissed because no one could positively identify the plaintiff, and that he has not been charged with any crimes at all since 2009, (6) that Defendant KRIS and its counsel pay the costs and attorney's incurred by the plaintiff's counsel in filing this motion in the sum of $1,000, and/or (7) any other remedy that the Court deems appropriate.

18.     The Court has the authority to issue such remedies pursuant to Rule 11 of the Federal Rules of Civil Procedure and case law interpreting the rule.   *See*, *e.g.*, *Thomas v. Capital Sec. Services*, 836 F.2d 866, 878 (5th Cir. 1988); *Rentz v. Dynasty*

*Apparel Indus.*, 556 F.3d 389, 395 (6th Cir. 2009).

### Publicly Broadcasting Material obtained in Discovery,
### Motion for Sanctions, and Motion for Protective Order

19.    Defendant KRIS expressly acknowledged in its broadcasts of February 2014 that, while it was broadcasting nothing new, it nevertheless wanted to share with its viewers materials that it obtained in the discovery process after the plaintiff filed this lawsuit.  This is inappropriate.

20.    The Supreme Court has stated that "pretrial depositions and interrogatories are not public components of a civil trial," as they were not open to the public at common law and, as a matter of modern practice, generally are conducted in private.  *United States v. $9,041,598.68 (Nine Million Forty One Thousand, Five Hundred Ninety Eight Dollars and Sixty Eight)*, 976 F.Supp. 654, 657-58 (S.D. Tex. 1997) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S.Ct. 2199, 2207-08, 81 L.Ed.2d 17 (1984) (emphasis added); *see Anderson v. Cryovac, Inc.*, 805 F.2d 1, 12 (1st Cir. 1986) ("discovery proceedings are fundamentally different from proceedings to which the courts have recognized a public right of access").  Further, because information gathered during pretrial discovery "may be unrelated, or only tangentially related" to the underlying cause of action, restraints on discovered but not yet admitted information "are not a restriction on a traditionally public source of information."  *Id.* (citing *Seattle Times*, 467 U.S. at 33, 104 S.Ct. at 2208; *see American Civil Liberties Union of Mississippi, Inc. v. State of*

9

*Miss.*, 911 F.2d 1066, 1072 (5th Cir. 1990), *cert. denied*, 519 U.S. 992, 117 S.Ct. 481, 136 L.Ed.2d 375 (1996) ("While the media generally have a right to publish information that they obtain, '[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control' ") (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 15, 98 S.Ct. 2588, 2597, 57 L.Ed.2d 553 (1978)).

21.    Discovery materials therefore are distinguishable from the "judicial records," to which the press may more easily gain access.  *$9,041,598.68 (Nine Million Forty One Thousand, Five Hundred Ninety Eight Dollars and Sixty Eight)*, 976 F.Supp. at 658 (citing *See*, *e.g.*, *Grove Fresh Distributors, Inc. v. Everfresh Juice Co*., 24 F.3d 893, 897-98 (7th Cir. 1994) (until admitted into the record, materials uncovered during pretrial discovery ordinarily are not within the scope of press access)).

22.    Public access to the discovery process does not play a significant role in the administration of justice.  *Anderson*, 805 F.2d at 12.  Indeed, if such access were to be mandated, the civil discovery process might actually be made more complicated and burdensome than it already is.  *Id.*  In discovery, the parties are given broad range to explore "any matter, not privileged, which is relevant to the subject matter involved in the pending action" so that they may narrow and clarify the issues and obtain evidence or information leading to the discovery of evidence for future use in the trial.  *Id.* (citing

10

FED. R. CIV. P. 26(b)(1); *Hickman v. Taylor*, 329 U.S. at 501, 67 S.Ct. at 388).   The public's interest is in seeing that the process works and the parties are able to explore the issues fully without excessive waste or delay.   *Id.*   But rather than facilitate an efficient and complete exploration of the facts and issues, a public right of access would unduly complicate the process.   *Id.*   It would require the court to make extensive evidentiary findings whenever a request for access was made, and this could in turn lead to lengthy and expensive interlocutory appeals, just as it did in this case.   *Id.*

23.   Accordingly, the law is well-settled that parties should not be making materials obtained in the discovery available to general public.   This is not an uncommon pillar of law.   Yet, that is precisely what Defendant KRIS, in cooperation with its counsel, did in this case.   They obtained written discovery from the plaintiff and issued a mountain of subpoenas for other discovery materials (most of which is entirely irrelevant) and then broadcast that material to the public in the very same community where this case is set to go to trial in July.   It is truly bizarre conduct and violative of the law.

24.   Therefore, the plaintiff seeks a protective order from this Court that prohibits further public broadcast of materials obtained by the Defendant in the discovery process in this case, including but not limited to deposition testimony.   The Court has such authority pursuant to *$9,041,598.68 (Nine Million Forty One Thousand, Five Hundred Ninety Eight Dollars and Sixty Eight)*, 976 F.Supp. at 657-58 and the authority

cited therein.

25.     Further, because of what Defendant KRIS did by publicly broadcasting discovery material, the plaintiff also seeks an appropriate sanction.  As noted, this Court has inherent power to sanction a party and its attorney.  *In re First City Bancorporation of Texas, Inc.*, 282 F.3d at 867.   This power can be exercised when a party and/or its attorney engage in conduct that is considered bad faith and failure to follow rules.  *See Gomez*, 255 F.3d at 1133-34.   It also includes conduct considered to be negligent or reckless with respect to the performance of duties to the court, parties, and opposing counsel.  *See Seltzer*, 227 F.3d at 41-42.

26.     The plaintiff contends that Defendant KRIS and its counsel's respective conduct, outlined above, warrants sanctions under the cited precedent.   At a minimum, Defendant KRIS and its counsel was negligent in its conduct.

27.     The remedy that the plaintiff seeks, at this time, is (1) a directive from this Court that counsel for Defendant KRIS must not publicly broadcast discovery material, (2) a directive that Defendant KRIS and its counsel issue a letter of apology to the plaintiff for its violative conduct, set forth above, (3) a directive that Defendant KRIS publicly retract its offending broadcasts and Facebook posts of February 2014 on five consecutive days at 6:00 p.m. and 10:00 p.m., (4) a directive that Defendant KRIS publicly broadcast for five consecutive days at 6:00 p.m. and 10:00 p.m., and on

Facebook, that the allegations against the plaintiff that it broadcast have never been proven, (5) a directive that Defendant KRIS publicly broadcast on five consecutive days at 6:00 p.m. and 10:00 p.m., and on Facebook, that the plaintiff was never charged with any crime when he was 17 years-old, as alleged, that he was never charged with any crime for indecent exposure in 2008, that while charges may have been filed against the plaintiff in 2009, they were dismissed because no one could positively identify the plaintiff, and that he has not been charged with any crimes at all since 2009, (6) that Defendant KRIS and its counsel pay the costs and attorney's incurred by the plaintiff's counsel in filing this motion in the sum of $1,000, and/or (7) any other remedy deemed appropriate by the Court.

28.    The Court has the authority to issue such remedies pursuant to Rule 11 of the Federal Rules of Civil Procedure and case law interpreting the rule.  *See*, *e.g.*, *Thomas*, 836 F.2d at 878; *Rentz*, 556 F.3d at 395.

### Prayer

29.    For these reasons, Plaintiff Christopher Williams respectfully requests that the grant the relief requested herein, and for such other relief, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

B R O O K S  L L P

13

s/Jon D. Brooks
Jon D. Brooks
Attorney-in-Charge
State Bar No. 24004563
400 Mann Street, Suite 1001
Corpus Christi, Texas 78401
361.885.7710
361.885.7716 (facsimile)
www.brooksllp.com

**Attorney for Plaintiff Christopher Williams**

## Certificate of Conference

The undersigned certifies that opposing counsel was contacted about the conduct identified in this motion, that opposing counsel invited the undersigned to file a motion, and that therefore opposing counsel is opposed to the relief sought by this motion.

s/Jon D. Brooks
Jon D. Brooks

## Certificate of Service

I hereby certify that the foregoing document was served upon all counsel of record on the 11th day of February 2014, by electronic mail from the Clerk of the Court, as provided by the rules, as follows:

Laura Lee Prather
Haynes and Boone, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701

s/Jon D. Brooks
Jon D. Brooks