**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER WILLIAMS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 2:13-CV-00124** |
| | § | |
| **CORDILLERA COMMUNICATIONS,** | § | |
| **INC., KVOA COMMUNICATIONS, INC.** | § | |
| **d/b/a KRIS COMMUNICATIONS,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO**
**CHAPTER 27 OF THE TEXAS CIVIL PRACTICE & REMEDIES CODE**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Cordillera Communications, Inc.,[1] KVOA Communications, Inc. d/b/a KRIS

Communications (hereinafter referred to as "KRIS" or "Defendants") by and through their

undersigned attorneys, file their Motion to Dismiss pursuant to Chapter 27 of the Texas Civil

Practice & Remedies Code[2] (hereinafter "Defendants' Anti-SLAPP Motion"[3] or "Motion to

Dismiss"), moving for dismissal of all of Plaintiff's claims arising out of KRIS' 2014

broadcasts[4], and in support thereof state as follows:

---

[1] Cordillera Communications, Inc.'s Answer, Cordillera did not publish any statements about Plaintiff and should not be a party to this lawsuit.  Out of an abundance of caution, however, Cordillera joins in this and other pleadings brought before the Court.

[2] A true and correct copy of the statute is attached hereto as Exhibit 1.

[3] SLAPP is an acronym for "strategic lawsuits against public participation."  The Texas anti-SLAPP law has been applied multiple times in federal court.  *See, e.g., NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 2014 WL 941049 (5th Cir. Mar. 11, 2014) (assuming, without deciding, the anti-SLAPP statute applies and authorizing an interlocutory appeal to the 5th Circuit under the statute); *Ascend Health Corp. v. Wells*, 2013 WL 1010589 (E.D.N.C. Mar. 14, 2013) (assuming, without deciding, the anti-SLAPP statute applies); *Culbertson, et al. v. Lykos, et al.*, 4:12-CV-03644 (S.D. Tex. 2013) (granting anti-SLAPP motion to dismiss); *Monaco Entertainment Group, LLC, v. City of El Paso, Texas, et al.*, 3:11-CV-00561-DB (W.D. Tex – El Paso, 2012) (granting anti-SLAPP motion to dismiss).  A true and correct copy of these decisions is attached as Appendix D.

[4] Plaintiff's Second Amended Complaint (D.E. 40), filed on February 27, 2014, brings new claims arising out of KRIS' February 9 and 11, 2014 broadcasts (hereinafter "KRIS' 2014 broadcasts" or "broadcasts at issue").  These

## I.
## SUMMARY OF BASIS FOR MOTION AND RELIEF REQUESTED

Plaintiff brought this retaliatory legal action against KRIS to try to silence and hinder KRIS' exercise of its right of freedom of speech.   KRIS conducted a year-long investigation during which KRIS discovered and confirmed a serious matter of public concern arising out of Plaintiff's continued teacher certification despite a lengthy string of allegations and investigations into Plaintiff's inappropriate behavior with students and co-eds.  The reporting on this investigation took place in two parts:  (1) the initial 2013 discussion of an investigation at West Oso ISD into Plaintiff for inappropriate actions with his student and Plaintiff's prior Travis and Nueces County arrests that were discovered at that time and (2) the follow up 2014 discussion about a system that failed the community by allowing a repeat offender to continue coaching and teaching high school students after more than a dozen victims came forward and said Plaintiff preyed upon them.  KRIS' reporting on this significant issue forms the basis of Plaintiff's legal action; specifically, Plaintiff sues over two broadcasts in a 2014 investigative series about the breakdown of our educational and criminal systems.   Although the 2014 investigative series was comprised of eight broadcasts, Plaintiff concedes the truth of six of the broadcasts in their entirety and all but small portions of the February 9 and 11, 2014 broadcasts[5] over which he now sues.[6]  Defendants file this motion within 60 days of the Amended Complaint in accordance with the Texas anti-SLAPP statute and this Court's Order (D.E. 37).  *See* Tex. Civ. Prac. & Rem. Code §27.001 *et seq*.

## II.
## COMPLAINED OF STATEMENTS

broadcasts form the basis of Defendants' Motion to Dismiss.  All other broadcasts over which Plaintiff has sued are the subject of Defendants' Motion for Partial Summary Judgment pending before this Court.  (D.E. 41).

[5] A true and correct copy of the broadcasts at issue are attached hereto as Exhibits 2 and 3 (DVD of broadcasts and transcripts of same).  The DVD and transcripts also include the February 18, 2014 broadcast and the March 2, 2014 disclaimer.  The entire 2014 investigative series is attached as Exhibit 17(b).

[6] *See* Plaintiff's Second Amended Complaint, ¶¶ 8-12. (D.E. 40), attached hereto as Exhibit 4.

Plaintiff brings new claims for the following Complained of Statements:

February 9, 2014 Broadcast

1.  Plaintiff complains that KRIS reported he was arrested for offenses involving "indecent exposure" and "master-bating [sic] in front of Texas A&M co-eds."[7] ("Complained of Statement #1").

February 11, 2014 Broadcast

2.  Plaintiff complains of KRIS' use of the phrase "ordered by a judge" when it reported Plaintiff was "sentenced to undergo counseling with a sex offender therapist." ("Complained of Statement #2").

3.  Plaintiff complains KRIS omitted in our broadcat that records of the 2008 and 2009 stalking and indecent exposure incidents had been expunged.[8]

### III.
### FACTUAL BACKGROUND

1.  On April 5, 2013, Plaintiff sued KRIS for defamation and defamation *per se* for statements made on KRIS' broadcasts in January and February, 2013.  KRIS was reporting on the ongoing investigation into Plaintiff's inappropriate behavior with a West Oso high school student and the actions being taken in response by the school board, the Texas Education Agency ("TEA"), and law enforcement.  They are not the subject of this Motion to Dismiss.

2.  On February 27, 2014 (D.E. 40), Plaintiff filed his Second Amended Complaint bringing new claims against KRIS for its February 9 and 11, 2014 broadcasts.[9]  Plaintiff complains the February 9th broadcast said he was arrested for offenses involving "indecent exposure" and "master-bating [sic] in front of Texas A&M coeds."[10]  He also alleges the February 11, 2014 broadcast falsely stated he was "ordered by a judge" to mandatory counseling when, according to Plaintiff, he "voluntarily agreed to attend counseling."[11]  Finally, Plaintiff complains KRIS did

---

[7] *Id.* at ¶8.
[8] *Id.* at ¶¶9-10.
[9] *See* Ex. 4 ¶¶ 8-12.  *But see*, Ex. 2 and 3, February 18, 2014 broadcast and March 2, 2014 disclaimer.
[10] *Id.* at ¶8.
[11] *Id.* at ¶11.  *But see*, Exs. 2 and 3, KRIS stated he was "sentenced" to undergo counseling.

not notify the public of the expungement of his stalking and indecent exposure records.[12]

3.    Plaintiff complains about KRIS' choice of words, even though Plaintiff admits the truth of the vast majority of the investigative series and the gist of several allegations of inappropriate behavior by him toward female students and co-eds.

4.    Plaintiff himself has admitted to being arrested on November 30, 2008 for the charge of stalking and on April 1, 2009 for the charge of indecent exposure.[13]  The criminal complaint filed against Plaintiff was for "exposing his genitals with the intent to arouse or gratify his sexual desires and masturbating in front of two women."[14]  The two women were described, by law enforcement, as Texas A&M co-eds.[15]  The fact of the subsequent expunction — almost three years later — does not falsify the action of the arrest.  Further, pursuant to Plaintiff's request, KRIS broadcast the fact of the expunction on February 18, 2014 and March 2, 2014.[16]  Finally, the official court documents from Plaintiff's prior harassment case show Plaintiff was required to complete six sessions with a sex offender therapist.[17]

5.    Plaintiff's claims are barred by the Anti-SLAPP statute which provides for immediate dismissal of meritless claims against one for exercising free speech rights.[18]  The statute is expressly designed to bring an early and definitive end to lawsuits instituted by plaintiffs who have made litigation their "weapon of choice" against free speech.

**IV.**
**TEXAS' ANTI-SLAPP STATUTE MANDATES DISMISSAL OF THIS CLAIM**

---

[12] *Id.* at ¶9.  *But see*, Ex. 2 and 3, February 18, 2014 broadcast and March 2, 2014 disclaimer.
[13] *See* Ex. 5(e), No. 4.  *See also*, Ex. 9(a), Aransas Pass ISD letter placing Plaintiff on administrative leave after his arrest for "the felony offense of stalking."
[14] *See* Ex. 12(a).
[15] *See* Ex. 5(d), p. 3.
[16] *See* Exs. 2 and 3.
[17] *See* Exs. 5(c) and 5(f).  The records also demonstrate the CCPD Chief of Police notified CCISD that Plaintiff "was guilty of telephone harassment" prior to his hiring.  *See* Ex. 10(a).
[18] *See* Appendix E for chart summarizing the truth of the Complained of Statements as supported by official documents.

**A.      The Texas Anti-SLAPP Statute**

6.      The Texas Citizens Participation Act, (known as the anti-SLAPP statute), was intended to encourage and protect discussion about matters of public concern.  The statute provides movants with substantive rights to expeditiously and economically dispense with litigation brought for the purposes of retaliation or silencing public comment.  If a claim in a lawsuit arises out of a party's exercise of free speech rights, then the claim is subject to a motion to dismiss that *must* be granted unless claimant can establish by *clear and specific* evidence a *prima facie* case for *each* element of his claim.[19]  Even if claimant meets his burden, the statute still mandates dismissal if movant can establish, by a preponderance of the evidence, an affirmative defense.[20]

**B.      Plaintiff's Lawsuit is Prohibited by the Anti-SLAPP Statute and Must Be Dismissed.**

7.      Under the anti-SLAPP statute, if a legal action is "based on, relates to, or is in response to a party's exercise of the right of free speech" the statute applies and the burden shifts to the non-movant.[21]  Here, there can be no doubt that Plaintiff's new claims against KRIS relate to its exercise of the right of free speech, which the statute defines as "a communication made in connection with a matter of *public concern*."  *Id.* at §27.001(3) (emphasis added).

8.      The story of Plaintiff's criminal allegations, arrests, charges, employment and resignations from multiple school districts in Corpus Christi is undisputedly a matter of public concern.[22]  Speech deals with a matter of public concern when, "it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."[23]

---

[19] *See* Tex. Civ. Prac. & Rem. Code §27.005(b).
[20] *Id.* at §27.005(d).
[21] *Id*. at §27.003(a).   "The anti-SLAPP statute defines a 'legal action' as a 'lawsuit, cause of action, petition, complaint, cross-claim or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *San Jacinto Title Services of Corpus Christi, LLC v. Kingsley Properties, L.P.*, ___ S.W.3d ___, 2013 WL 1786632 (Tex. App. – Corpus Christi 2013, pet. denied).
[22] *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 (1975) (matters of alleged criminal activity "are without question events of legitimate concern to the public.  Moreover, as the U.S. Supreme Court has held, what constitutes

9.      The anti-SLAPP statute also expressly defines "matter of public concern" to include an issue related to 1) health or safety; 2) "community well-being; 3) "the government;" and 4) "a public official" or "public figure."  Tex. Civ. Prac. & Rem. Code §27.001(7)(A-D).  A history of inappropriate conduct by Plaintiff (a teacher) with his students, the ongoing controversy surrounding Plaintiff, Plaintiff's criminal history, and Plaintiff's employment by, and subsequent resignations from, Aransas Pass ISD, Corpus Christi ISD, and West Oso ISD clearly falls within the statutory definition.  The fact that a teacher with more than a decade of run-ins with law enforcement for claims ranging from harassment to indecent exposure continued to be employed as a teacher in the Corpus Christi community is a matter of public concern.  Because of the health and safety concern he posed, Plaintiff was the subject of investigations by the TEA, the Corpus Christi Police Department ("CCPD"), and the Nueces County District Attorney's Office.

10.     Further, Plaintiff is undoubtedly a public figure because he played a central role in a public controversy and his defamation claims arise from that controversy.[24]  Speech concerning a public figure also qualifies as a matter of public concern under the anti-SLAPP statute.[25]

11.     Pursuant to Tex. Civ. Prac. & Rem. Code §27.005(b), the Court <u>shall</u> dismiss a legal action if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of its free speech rights or the exercise of its rights to petition.  In considering this motion, the Court is to "consider the pleadings and supporting and opposing affidavits."  *Id.* at §27.006.  On the face of the Second

---

a matter of "public concern" must be construed broadly, lest "courts themselves . . . become inadvertent censors." *Snyder v. Phelps,* 562 U.S. __, 131 S.Ct. 1207, 1216 (2011).
[23] *Id.* (internal marks and citations omitted).
[24] *WFAA-TV, Inc. v. McLemore,* 978 S.W.2d 568, 571-72 (Tex. 1998) (finding individuals can be public figures in context of defamation suit where there is a public controversy, the individual has more than a tangential role in the controversy, and the alleged defamation is related to the individual's participation in the controversy).
[25] Tex. Civ. Prac. & Rem. Code §27.001(7)(D).

Amended Complaint, the statute applies.[26]

12.     Because Defendants have met their burden, the only way Plaintiff can avoid dismissal is to meet the very heavy burden of establishing by the heightened standard of clear and specific evidence[27] a *prima facie* case for <u>each</u> essential element of the claim in question.   In order to meet this burden, Plaintiff must provide clear and specific evidence that would be sufficient to preclude the granting of summary judgment.   *See, e.g., In re Does*, 242 S.W.3d 805 (Tex. App. – Texarkana 2007, no pet.).   Simply put, Plaintiff cannot demonstrate that it is even arguable he can succeed on the merits, much less show clear and specific evidence of each element of his claim as required by the anti-SLAPP statute.   Plaintiff was the legitimate object of public concern as a result of the publicity surrounding his employment termination proceedings at West Oso ISD, his prior teaching jobs and circumstances of departure, his criminal record, and his prior arrests about which the media was notified.   All of these factors led to KRIS's legitimate reporting about the decade-long plethora of allegations against Plaintiff for inappropriate, harassing, and sexual behavior that included a criminal history wherein law enforcement described him as a "predator."[28]   This reporting undoubtedly relates to the exercise of KRIS' right to free speech, which mandates the protection of the anti-SLAPP statute.

**C.     The anti-SLAPP statute applies to Texas State Law claims in Federal court**

13.     As a threshold issue, the Fifth Circuit has held that state anti-SLAPP statutes apply in federal court.[29]   Last month, in addressing the applicability of the Texas anti-SLAPP statute, the

---

[26] The Court can and should consider the Complaint as evidence that the statute applies.  *See Rio Grande II20 Guardian v. Robert Muller Family P'ship Ltd.*, 2014 WL 309776 (Tex. App. – San Antonio, January 29, 2014, no pet. h.) (considering plaintiff's petition as evidence to determine statute applies and reversing denial of motion).

[27] The Legislature chose to apply the same heightened standard in anti-SLAPP motions as in reporter's privilege matters.  *See, Channel Two Television v. Dickerson*, 725 S.W.2d 470 (Tex. App. – Hou. [1st Dist.] 1987, orig. proc.); Tex. Civ. Prac. & Rem. Code, Ch. 22 and Tex. Code of Crim. Proc., Art. 38.11.

[28] *See* Ex. 8(d).

[29] *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 169 (5th Cir. 2009); *Brown v. Wimberly*, 477 F. App'x 214, 216 (5th Cir. 2012).  Other circuit courts have ruled similarly.  *See United States ex rel. Newsham v. Lockheed*

Fifth Circuit assumed the statute applied in federal court and accepted jurisdiction of an interlocutory appeal of the denial of an anti-SLAPP motion by the U.S. District Court for the Southern District of Texas.[30]  Also, at least two Texas federal district courts have applied the anti-SLAPP statute and granted motions to dismiss under the Act.[31]  Finally, the Eastern District of North Carolina has applied the Texas anti-SLAPP statute in a federal diversity case.[32]  Thus, the anti-SLAPP statute applies, and, as a result, Plaintiff's claims must be dismissed.

**D.     Attorneys' Fees and Sanctions are Mandated Under the Statute.**

14.     If Plaintiff cannot meet his burden under the anti-SLAPP statute, the Court is required to award to the moving party court costs, reasonable attorney's fees, and expenses incurred.  The Court must also award sanctions against the claimant as the Court determines sufficient to deter the party from bringing similar actions.[33]  As demonstrated below, because Plaintiff cannot meet his burden, the Court should award KRIS its costs, fees, and expenses.

## V.
## DISCOVERY IS SUSPENDED

15.     "Once a defendant brings a motion to dismiss under this chapter, all discovery in the lawsuit is suspended." Tex. Civ. Prac. & Rem. Code §27.006(a)[34].

## VI.
## PLAINTIFF CANNOT MEET HIS BURDEN TO AVOID DISMISSAL

16.     Having established the Act applies, the burden shifts to Plaintiff to establish a *prima facie*

---

*Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999) (holding a similar motion to strike under California state law applies in federal court); *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005) (*per curiam*) (reaffirming *Newsham*); *Godin v. Schencks*, 629 F.3d 79, 81 (1st Cir. 2010) (applying Maine's anti-SLAPP statute).
[30] *See NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, __ F.3d __, 2014 WL 941049 (5th Cir. March 11, 2014).
[31] *See Culbertson, et al. v. Lykos, et al.*, 4:12-CV-03644 (S.D. Tex. 2013); *Monaco Entertainment Group, LLC v. City of El Paso, Texas, et al.*, 3:11-CV-00561-DB (W.D. Tex. – El Paso 2012).
[32] *See Ascend Health Corp. v. Wells*, 4:12-CV-00083-BR, 2013 WL 1010589 (E.D.N.C. Mar. 14, 2013).
[33] *See* Tex. Civ. Prac. & Rem. Code §27.009(a)(2); *Ramsey v. Lynch*, 10-12-00198-CV, 2013 WL 1846886 (Tex. App. – Waco, May 2, 2013, no pet.); *Kinney v. BCG Attorney Search, Inc.*, 03-12-00579-CV, 2013 WL 4516106 (Tex. App. – Austin, Aug. 21, 2013, no pet. h.) (affirming $75,000 award of sanctions).
[34] *See also, San Jacinto Title v. Kinglsey Properties, LP*, ___ S.W. 3d ___, 2013 WL 1786632 (Tex. App. – Corpus Christi 2013, pet. denied);

case for each essential element of his claims arising out of the 2014 broadcasts.  The elements Plaintiff must provide clear and specific evidence of are:  (1) the statements made by Defendants are materially false statements of fact, (2) of and concerning the Plaintiff, (3) published with actual malice, (4) resulting in damages, and (5) no privileges apply.[35]

17.     Plaintiff cannot meet this burden because the Complained of Statements are true or substantially true, privileged, made without actual malice, and no damages resulted from the broadcasts as opposed to Plaintiff's underlying and habitually inappropriate behavior.  Thus, there are *several* essential elements of his claim that Plaintiff cannot provide specific evidence of, but, even if only one element cannot be proven, the Court must grant the anti-SLAPP motion.

18.     As also set forth in Defendant's Motion for Partial Summary Judgment (D.E. 41), Plaintiff has been tied to criminal accusations for being a sexual predator for a period spanning his entire adulthood (at least 13 years), over two counties, in three school districts and involving more than a dozen known victims.  Claims made against him include:  harassment, indecent exposure, stalking, on-line solicitation of a minor, and more.  For the Court's convenience, a copy of the Undisputed Facts and Timeline are attached hereto as Appendices B and C.

19.     In ruling, the Court must construe the statements at issue as a whole, in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement, not how the plaintiff interprets them.[36]   Given the undisputed facts herein,

---

[35] *See WFAA v. McLemore*, 978 S.W.2d 568 (Tex. 1998); *KTRK v. Robinson,* 409 S.W.3d 682, 689 (Tex. App. – Hou. [1st Dist.] 2013, pet. denied); *Avila v. Larrea*, 394 S.W.3d 646, 657 (Tex. App. – Dallas 2012, pet. denied).

[36] *Columbia Valley Reg'l Med. Ctr. v. Bannert,* 112 S.W.3d 193, 198 (Tex. App. – Corpus Christi 2003, no pet.) (citing *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 114 (Tex. 2000)).  *See also, Vice v. Kasprzak,* 318 S.W.3d 1, 20-21 (Tex. App. – Hou. [1st Dist.] 2009, pet. denied) (plaintiff's "own characterization of the allegedly defamatory statements cannot form the basis for a defamation suit"); *Overstreet v. Underwood,* 300 S.W.3d 905 (Tex. App. – Amarillo 2009, pet. denied) (court properly looked to construction average reasonable person would put on statement and not defamatory construction suggested by plaintiff); *Arant v. Jaffe,* 436 S.W.2d 169 (Tex. Civ. App. – Dallas 1968, no writ) (finding plaintiff's allegation that statement accused him of being a thief and committing a crime were not substantiated by the proof.  Test is what construction would be placed upon statement by average reasonable person or general public, not plaintiff).

Plaintiff cannot provide a *prima facie* case by clear and specific evidence that the KRIS broadcasts contain materially false statements, that were not privileged, and that were made with actual malice or caused damages — all essential elements of his claim.

**A.    Plaintiff Cannot Meet His Burden of Showing the Statements at Issue Are Materially False.**

20.    Plaintiff cannot establish clear and specific evidence of material falsity.  When suing a media defendant for defamation, the plaintiff has the burden to demonstrate the statements were false.[37]  Further, to defeat an anti-SLAPP motion, Plaintiff's burden of "a showing of falsity require[s] more than minor inaccuracies in the alleged defamatory statements."[38]

21.    Plaintiff complains about two broadcasts, taken out of context from an eight part series, reporting on the ongoing controversy surrounding Plaintiff.  Plaintiff continues to mischaracterize the broadcasts by claiming KRIS said he was convicted of a "sex crime" — but, *nowhere was this ever said in <u>any</u> KRIS broadcast*.  His newer complaints arise out of KRIS truthfully reporting Plaintiff had been arrested for offenses involving "indecent exposure" and "masturbating in front of Texas A&M coeds" and that Plaintiff was "ordered by a judge" to attend mandatory counseling with a sex offender therapist.

22.    The February 9th broadcast correctly stated Plaintiff's employment with Aransas Pass ISD "ended after his arrest for indecent exposure, which included masturbating in front of Texas A&M coeds." *See* Exs. 8(a)-(c).  Plaintiff was arrested for indecent exposure on April 1, 2009[39] and submitted his letter of resignation on April 23, 2009 effective June 5, 2009.  *See* Ex.9(b).  KRIS also included Plaintiff's attorney's entire response in the broadcast. *See* Exs. 2 and 3.

---

[37] *See McIlvain v. Jacobs*, 794 S.W.2d 14 (Tex. 1990) (in lawsuits against media defendants, the plaintiff's burden of proving falsity is imposed by constitutional considerations of free speech and free press).
[38] *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 83 (Tex. App. – Hou. [1st Dist.] 2013, pet. filed) (reports of investigations and allegations of abuse in a nursing home were substantially true).
[39] *See* Ex. 12(c).

23.     The February 11th broadcast states:

>   "It happened in the summer of 2006 when a judge in Austin ordered Williams to
>   start counseling with a sex offender therapist.   That's because he admitted to
>   police that he made harassing phone calls to a University of Texas co-ed, calls
>   where Williams would moan and say her name ….   But back to Williams who
>   was simultaneously coaching girls' basketball at King High School while
>   attending sessions with a sex offender therapist.   But even before he could
>   complete that treatment, Williams was under investigation for inappropriate and
>   unprofessional conduct with a 16-year-old King student ….   Chris Williams
>   would now move on to the Aransas Pass School District, and while coaching and
>   teaching there, he would be arrested by police for stalking and indecent exposure,
>   but even that would not compel the Texas Education Agency to revoke Williams'
>   teaching credentials."  *Id.*

These statements are true as well.   And, once again, KRIS included Plaintiff's counsel's

comments in response to the broadcast.  *Id.*

24.     The broadcasts at issue were part of ongoing investigation into a public controversy

surrounding the breakdown in our educational and law enforcement systems that allowed an

individual described by law enforcement as having "the characteristics of a predator"[40] to

continue to hold a teacher's license and work in our public schools.   The Court must consider

KRIS' entire coverage of the controversy in light of the surrounding circumstances based on how

a person of ordinary intelligence would perceive the entire statement.[41]

25.     With regard to Complained of Statement #1, it is undisputed Plaintiff *was* arrested and

charged with indecent exposure.[42]   On December 11, 2008, CCPD notified the media of

Plaintiff's arrest (on November 30, 2008) for stalking,[43] and that CCPD investigators had

---

[40] *See* Ex. 8(d).
[41] *See Musser v. Smith Protective Services, Inc.*, 723 S.W.2d 653, 655 (Tex. 1987) ("The Court construes the
statement as a whole in light of surrounding circumstances based on how a person of ordinary intelligence would
perceive the entire statement.").   This is because statements may be made defamatory by taking them out of context,
and although they may be false, abusive, unpleasant and objectionable to the plaintiff, they may not be "defamatory"
in an actionable sense.  *San Antonio Express-News v. Dracos*, 922 S.W.2d 242, 248 (Tex. App. – San Antonio 1996,
no writ); *Simmons v. Ware*, 920 S.W.2d 438, 444-45 (Tex. App. – Amarillo 1996, no pet.).  *See also,* Ex. 17(b).
[42] *See* Ex.8(a) and 8(b).
[43] *See* Testimony of CCPD Officer Alvarado, Q:  "So on November 30th .. At that point was Mr. Williams under
arrest?"  A: "Yes."  Ex. 5(d), pp. 57-58.  And, he was arrested on April 1, 2009 for indecent exposure. *See* Ex. 12(c).

"connected him to three separate indecent exposure cases."[44]  On March 25, 2009, a Complaint

for indecent exposure was filed against Plaintiff, and the next day a probable cause order was

signed in the case.[45]  On March 27, 2009, an arrest warrant was issued for Plaintiff alleging two

counts of indecent exposure culminating with his arrest on April 1, 2009.[46]  If Plaintiff's

complaint is that he was not arrested for indecent exposure until 2009, this is not material.  The

"gist", that he was arrested, is true whether that particular arrest occurred in 2009 or 2008.[47]

26.     Plaintiff may be complaining because the charges were ultimately dismissed when the

victim could not 100 percent identify Plaintiff,[48] or that, months later, Plaintiff filed a Petition for

Expunction that was ultimately granted at the end of 2011.[49]  However, a subsequent expunction

does not mean the arrests did not occur or that the charges were not filed against Plaintiff for

indecent exposure.  He undoubtedly was "connected to" the indecent exposure cases that formed

the basis of the Complaint filed by law enforcement.[50]  In *Goss v. Houston Community*

*Newspapers*,[51] a plaintiff complained that a newspaper reported his arrest and charges brought

against him, despite the fact that they were ultimately dismissed and expunged.  The Court held

that:

> by bringing this lawsuit regarding his arrest, Goss put the expunged records at
> issue, and thus [the newspaper was] entitled to use them.  *See W.V. v. State*, 669
> S.W.2d 376, 379 (Tex. App. – Dallas 1984, writ ref'd n.r.e.) (noting that plaintiff
> filing a lawsuit arising out of an expunged arrest 'necessarily by his own
> allegations makes the materials contained in the expunged records … a matter of

---

[44] *See* Ex. 8(c).  It appears Plaintiff's real complaint is with CCPD for notifying the media and for jumping the gun on his arrest for indecent exposure.  In Plaintiff's analysis of the alleged defamatory statement, he identifies CCPD as a "negligent/inaccurate party" because the email was sent to the media *before* his arrest for indecent exposure. (*See* Ex. 5(b) at PLAINTIFF 000012-000013).  Plaintiff cannot recover from CCPD, a governmental entity, so he instead sues the private sector television station for relying on the government document.

[45] *See* Exs. 12(a) (b).

[46] *See* Ex. 12(c).

[47] Plaintiff admitted to "a couple of arrests."  *See* Ex. 5(a), No. 11 and subsequently expanded on this explanation specifying his arrests for stalking, indecent exposure and communication harassment. *See* Ex. 5(e), No. 11.

[48] *See* Ex. 4(e), pp. 51-56.

[49] *See* Ex. 12(d).

[50] *See* Ex. 8(c).

[51] 252 S.W.3d 652 (Tex. App. – Hou. [14th Dist.] 2008, no pet.).

public record subject to discovery proceedings"); *see also, Thomas v. City of Selma,* No. SA-06-0119-XR, 2006 WL 2854405 at *3 (W.D. Tex. 2006 ) (granting motion to produce expunged records because plaintiff's lawsuit made them relevant).  The remedy of expungement was never intended as a device for a plaintiff in a lawsuit related to the expunged matter to control the availability of relevant evidence.  *See W.V.*, 669 S.W.2d at 379.[52]

27.     With regard to Complained of Statement #2, the literal truth is that as a part of the

disposition of Plaintiff's harassment charge, he was required to undergo six sessions with a sex

offender therapist — a fact he does not dispute.[53]  Thus, a person of ordinary intelligence would

have interpreted the broadcasts as substantially true.

**B.      The Statements at Issue in this Lawsuit are Privileged as a Matter of Law.**

28.     In addition to requiring dismissal if the non-moving party fails to meet his burden, the

statute requires a court to dismiss a legal action against the moving party if the moving party

establishes by a preponderance of the evidence each essential element of a valid defense to the

claim."  The absence of privilege is also an essential element of a defamation claim.[54]

29.     The statements at issue are privileged as a reasonable and fair comment on a matter of

public concern published for general information pursuant to the common law and the Texas and

the United States Constitutions.   Plaintiff's claims are barred by common law, statutory and

constitutional privileges such as the fair report privilege, the neutral report privilege, the judicial

and official proceedings privilege, the fair comment privilege, the common interest privilege,

Tex. Civ. Prac. & Rem. Code §73.002, and the privileges of free speech and free press found in

Article I, Section 8 of the Texas Constitution and the First and Fourteenth Amendments to the

United States Constitution.

---

[52] *Id.* at 656-657.
[53] *See* Ex. 5(c).
[54] Tex. Civ. Prac. & Rem. Code §27.005; *Fitzmaurice v. Jones*, 417 S.W.3d 627, 632 (Tex. App. – Hou. [14th Dist.] 2013, no pet.) (dismissing a defamation claim because the statements at issue were privileged).  *See, e.g., Cantu v. Rocha*, 77 F.3d 795, 809 (5th Cir. 1996); *Reeves v. W. Co. of N. Am.*, 867 S.W.2d 385, 393 (Tex. App. – San Antonio 1993, writ denied), *abrogated on other grounds by Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994).

30.     The fair report privilege includes reporting the contents of pleadings filed with the courts and substantially true accounts of official or judicial proceedings.  The use of the phrase "fair, true and impartial" in the privilege has been construed to mean "substantially true."[55]  KRIS relied upon judicial and official records, as well as information presented to the school board; therefore, its reporting was protected by the fair report privilege.  The Texas Supreme Court's application of the substantial truth test to a report of a judicial or official proceeding demonstrates that considerable latitude has been given in this context.[56]  Defendants accurately reported the matters concerning the investigation into Plaintiff and his resignation from West Oso ISD, CCPD investigation, and the TEA investigation and, as such, they cannot be held liable for defamation.

31.     Furthermore, because the broadcasts focused on highly relevant child health and safety issues and government investigations, Defendants are also protected by the fair comment privilege which applies when giving a reasonable and fair comment on a matter of public concern.  *See* Tex. Civ. Prac. & Rem. Code §73.002(b)(2).  The fair comment privilege extends to reports on what state agencies and officials are doing.[57]  Reporting on allegations of wrongdoing by school district employees certainly falls within the purview of the privilege.

32.     Defendants were reporting on the official proceeding of West Oso ISD and prior official proceedings before CCISD and Aransas Pass ISD — all of which hired Plaintiff and then placed

---

[55] *Herald-Post Publishing Co., Inc. v. Hill*, 891 S.W.2d 638 (Tex. 1994); *Langston v. Eagle Publishing Co.*, 719 S.W.2d 612 (Tex. App. – Waco 1986, writ ref'd n.r.e.).

[56] *See also, Cox v. Cohn*, 420 U.S. at 492, 95 S. Ct. at 1975 (special protected nature of accurate reports of judicial proceedings through the First Amendment has repeatedly been recognized); *Wavell v. Caller-Times Publishing Co.*,809 S.W.2d 633, 635 (Tex. App. – Corpus Christi 1991, writ denied) *abrogated on other grounds by Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994) (both U.S. and Texas Constitutions "prohibit civil damages against a newspaper for accurate or substantially true accounts of newsworthy matters arising from and pertaining to judicial proceedings."); *Barbouti v. Hearst Corp.*, 927 S.W.2d 37, 50-52 (Tex. App. – Hou. [1st Dist.] 1996, writ denied).

[57] *See, e.g., Brewer v. Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 644-45 (Tex. App. – Ft. Worth 1998, no pet.) (fair comment privilege applied to primarily factual account of state agency inspections); *Swate v. Schiffers*, 975 S.W.2d 70, 77 (Tex. App. – San Antonio 1998, pet. denied) (Broadcasts concerning complaints made to the medical board constituted privileged reports of an official proceeding about medical care, which is a matter of public concern).

him on administrative leave after he conducted himself in an inappropriate manner with a high school student or after he was arrested for inappropriate actions toward several local Texas A&M students.[58]  In addition, Defendants reported on judicial proceedings brought against Plaintiff in Travis County for telephone harassment, and in Nueces County for indecent exposure.  To support Complained of Statement No. 1, Defendants relied upon judicial records and official statements by law enforcement including the press release issued by CCPD Captain Todd M. Green, on December 11, 2008, which said in pertinent part:

> **Subject:       Arrest of suspect wanted for Indecent Exposure**
>
> **Corpus Christi Police Department Investigators have filed three cases of Indecent Exposure on Christopher Williams (8-7-83).  Williams was arrested by patrol officers on November 30, 2008 after a woman called police from an apartment in the 1800 block of Ennis Joslin to report a suspicious male subject was stalking her.  Williams was arrested and CID Detectives later connected him to three separate cases on the South Side of Corpus Christi where women reported a man had exposed himself to them.**

*See* Ex. 8(c).  Even if the police made a mistake, the privilege also extends to reporting based on erroneous police department information.[59]

33.    In *Goss*, the plaintiff sued over a report — which was based on a police press release — stating that he had been arrested for drag racing and possession of controlled substances.  Goss sued for defamation claiming he was never charged with drag racing, and the controlled substance charge was later dismissed and expunged.[60]  His claim failed.  The court held the accuracy of an allegedly defamatory publication based on a police press release is determined by comparing it to the law enforcement statement upon which the publication is based.  *Id.* at 655 (citations omitted).  Plaintiff's Complained of Statement No. 1 is KRIS' report that Plaintiff was

---

[58] *See* Ex. 5(d) at p. 3, in which Nueces County D.A. Kimberly Gonzales stated "The State would stipulate this is a warrantless arrest [of Christopher Williams] … there is a suspect who has been going around town around Texas A&M University area masturbating in front of young women who — most of which are students who attend the university."  *See also*, Ex. 5(d), pp. 57-58.

[59] *Freedom Communications v. Sotelo,* 2006 WL 1644602, 34 Media L. Rep. 2007 (Tex. App. – Eastland 2006).

[60] *Goss v. Houston Community Newspapers,* 252 S.W.3d 652 (Tex. App. – Hou. [14th Dist.] 2008, no pet.).

arrested for offenses involving "indecent exposure" and (in Plaintiff's words) "master-bating [sic] in front of Texas A&M co-eds." The D.A.'s testimony, criminal file and statement from the CCPD police department dated December 11, 2008, says just that — Williams was arrested for stalking and has been connected to three indecent exposure cases.[61] His later arrest records establish he was arrested for and charged with indecent exposure.[62] The hearing on the Motion to Suppress describes his actions as exposing himself in front of Texas A&M co-eds.[63] The fact that the records were later expunged does not change history. Still, even though the subsequent expunction does not change the fact of an arrest, KRIS did broadcast on multiple occasions that the stalking and indecent exposure cases have been expunged.[64]

34. With regard to Complained of Statement #2, the Deferred Prosecution Agreement clearly mandates Plaintiff attend six counseling sessions with a sex offender therapist.[65]

35. The First Amendment and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information contained in official court records.[66] To hold otherwise would result in the suppression of news available to the public. It is the burden of the trial court to "see if the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment."[67] This is exactly what KRIS was doing in covering this highly newsworthy event, which resulted in criminal investigations and the recommended termination of Plaintiff from multiple school districts.[68] Thus, the Complained of Statements relate to fair reporting on matters of public concern, as well

---

[61] *See* Ex. 8(c). *See also*, Exs. 5(d), pg. 3, 12(a)(c).
[62] *See* Ex. 8(b).
[63] *See* Ex. 5(d) at p. 3.
[64] *See* Ex. 3.
[65] *See* Ex. 5(c).
[66] *Cox v. Cohn*, 420 U.S. 469, 95 S. Ct. 1029 (1975).
[67] *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d at 572.
[68] *See, e.g., Pardo v. Simons*, 148 S.W.3d 181, 189 (Tex. App. – Waco 2004, no pet.) (fair comment on public officials has constitutional status; criticism of D.A. and investigator in capital murder trial lies at the heart of robust public debate); *see also, Swate v. Schiffers*, 975 S.W.2d 70, 77 (Tex. App. – San Antonio 1998, pet. denied).

as a fair, true and impartial account of judicial and official proceedings and, as such, are privileged as a matter of law.

## C.   Plaintiff Cannot Establish Defendants Acted with Actual Malice.

36.   Because the broadcasts are protected by numerous qualified privileges, and because Plaintiff is a public figure, Plaintiff cannot defeat these privileges unless he can prove actual malice.[69]  Further, a public figure defamation Plaintiff confronted with an anti-SLAPP motion is required to prove that defendants acted with actual malice by clear and specific evidence.[70]

37.   There can be no doubt that the discussion was about a matter of public concern and Plaintiff was, at a minimum, a limited purpose public figure.  To determine if an individual is a limited-purpose public figure, the courts have developed a three part test:  (1) the controversy must be public in the sense that people are discussing it and people (other than the immediate participants in the controversy) are likely to feel the impact of its resolution, (2) the plaintiff must have more than a trivial or tangential role in the controversy, and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy.[71]  Plaintiff's inappropriate actions with female students was the topic of a significant public controversy that was discussed at an open West Oso ISD school board meeting.  What the school board knew and didn't know about Plaintiff's past indiscretions was relevant to the controversy.  Plaintiff himself was at the forefront of the controversy, it was discussed by multiple media outlets[72] and through the public

---

[69] *Randall's Food Market, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) (Actual malice is required to defeat the application of a qualified privilege); *see also, Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771 (Tex. 1994).

[70] *Avila v. Larrea*, 394 S.W.3d 646, 657 (Tex. App. – Dallas 2012, pet. denied) (noting the standard and reversing a denial of an anti-SLAPP motion).  *See also, Combined Law Enforcement Ass'n of Texas v. Sheffield*, 2014 WL 411672 (Tex. App. – Austin, January 31, 2014, no pet. h.) (reversing a denial of an anti-SLAPP motion and noting that Plaintiff failed to produce evidence of actual malice, one of the elements of his defamation claims); *Farias v. Garza*, ___ S.W.3d ___, 2014 WL 300983 (Tex. App. – San Antonio 2014, no pet. h.) ("Because Garza's pleadings and supporting affidavits do not state a minimum quantum of clear and convincing evidence on the essential element of either negligence or malice as required under *Hancock*, we conclude Garza did not satisfy his [anti-SLAPP] burden on his defamation per se claim.").

[71] *Trotter v. Jack Anderson Enter., Inc.*, 818 F.2d 431, 433-34 (5th Cir. 1987).

[72] *See* Exs. 13 and 14; *see also*, Ex. 5(b).

meeting process, and the public at large would feel the impact of the resolution of the controversy.  Thus, Plaintiff meets the three part test to be a limited-purpose public figure.

38.     Further, Plaintiff was a public high school coach and teacher who had already gained notoriety in the community as a high school basketball star and the son of popular West Oso ISD athletic director, Roy Williams.  Plaintiff held the positions of girls' and boys' basketball coach, boys' cross country coach, boys' and girls' tennis coach, and teacher at multiple public schools. Although a Texas school teacher alone might not be considered a public official,[73] one who has notoriety as a coach, former athletic star, and son of a popular athletic director likely does meet the criteria.[74]   Whether an individual is a public figure is a question of law for the court.  *Id*. Individuals, like Plaintiff, become limited-purpose figures by being drawn into a public controversy.[75]   Plaintiff, by his own conduct, was involved in a subject of legitimate public concern that was sufficient to invite public comment.  His inappropriate actions toward female students was discussed at a West Oso ISD school board meeting,[76] reported on by multiple media outlets[77] and investigated by law enforcement.[78]   Public testimony was taken about him.[79]   The vote to terminate him was a public issue, and the ultimate agreed upon resignation was of interest to the community.  Given the allegations made against Plaintiff and the matters of public concern involved, Plaintiff is considered a limited-purpose public figure, or, at the very least, an

---

[73] *See Poe v. San Antonio Express-News*, 590 S.W.2d 537 (Tex. App. – San Antonio 1979, writ ref'd n.r.e.).

[74] *See Johnson v. Southwestern Newspapers Corp.*, 855 S.W.2d 182 (Tex. App. – Amarillo, 1993, writ denied) (high school coach is public figure).  *See also, Johnston v. Corinthian*, 583 P.2d 1101 (Okla. 1978) (grade school wrestling coach is public official); *Kelley v. Bonney*, 221 Conn. 549, 606 A.2d 693, 710 (1992) (public school teacher is public official); *Sewell v. Brookbank*, 119 Ariz., 422, 425, 581 P.2d 267, 270 (1978) ("As far as the law of defamation is concerned, teachers are 'public officials.'").

[75] *Gertz v. Welch, Inc.*, 48 U.S. 323, 352, 94 S. Ct. 2997, 3013 (1974); *Einhorn v. La Chance*, 823 S.W.2d 405, 413 (Tex. App. – Hou. [1st Dist.] 1992, writ dism'd w.o.j.).

[76] *See* Ex. 5(g) and (h).

[77] *See* Exs. 13 and 14; *see also*, Ex. 5(b).

[78] *See* Exs. 5(c) and (d), Ex. 6, Ex. 7, Ex. 8 and Ex. 12.

[79] *See* Ex. 5(g) at PLAINTIFF 000073.

involuntary public figure.[80]  According to the Corpus Christi Court of Appeals:

> While not every public employee is a public official, the rule is not limited to the upper echelons of government.  The scope of the public official rule extends 'to anything which might touch on an official's fitness for office' including personal attributes such as 'dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the individual's private character.[81]

Whether Plaintiff was making advances towards his students is a characteristic worthy of discussion that touches upon his fitness for office and transforms him into a public figure for purposes of discussion about this topic.

39.    A public figure plaintiff must show actual malice to recover for defamation against a media defendant.[82]  "Actual malice" means not ill will, but publication of a false statement knowing the statement was false, or with reckless disregard as to the truth of the statement.[83]  "Reckless disregard" is not sloppiness, but rather that the publisher in fact entertained serious doubts about the truth of the statement.[84]  To prove actual malice, Plaintiff must offer proof of the defendant's state of mind at the time of publication.[85]  The uncontroverted testimony establishes Defendants believed the broadcasts were true at the time they aired[86] and the steps

---

[80] *Brewer v. Memphis Pub. Co.*, 626 F.2d 1238, 1254 (5th Cir. 1980) (by choosing to engage in activities that necessarily involved increased public exposure and media scrutiny, plaintiff played more than a trivial or tangential role in the controversy and, therefore, bore the risk of injury to his reputation); *Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 862 (5th Cir. 1978) (individual's desire not to be a public figure does not matter if his activities are of legitimate public concern that invited public comment); *McLemore*, 978 S.W.2d at 571-573 (a plaintiff can become a public figure by "choosing to engage in activities that necessarily involved increased public exposure and media scrutiny.").  *See also*, *ABC v. Gill*, 6 S.W.3d 19 (savings and loan owners under investigation during financial crisis were public figures); *Swate v. Schiffers*, 975 S.W.2d at 75-76 (public figure even if Plaintiff may not have voluntarily injected himself into the controversy when his behavior was the type that interests the public); *Brueggemeyer v. ABC, Inc.*, 684 F. Supp. 452, 458 (N. D. Tex. 1988) (plaintiff, who had been accused of engaging in meat-selling scam on several occasions, was a public figure, in part because he "voluntarily engaged in a course that was bound to invite public attention and comment"); Restatement (Second) of Torts §652D, cmt. F (1977).

[81] *Villarreal v. Harte-Hanks Communications, Inc.,* 787 S.W.2d 131 (Tex. App. – Corpus Christi 1990), *cert. denied*, 499 US 923, 111 S. Ct. 1316 (1991) (internal citations omitted).

[82] *NYT v. Sullivan*, 376 U.S. 254 (1964); *Gertz v. Welch*, 418 U.S. 323 (1974); *Curtis Publishing Company v. Butts*, 388 U.S. 130 (1967); *Casso v. Brand*, 776 S.W.2d at 557.

[83] *Gertz*, 94 S. Ct. at 3013; *Casso*, 776 S.W.2d at 554.

[84] *Id.* at 558.

[85] *Abdel-Hafiz v. ABC, Inc.*, 240 S.W.3d 492, 519 (Tex. App. – Fort Worth 2007, pet. denied).

[86] *See* Affidavit of Andrew Ellison, Ex. 15; Affidavit of Veronica Flores, Ex. 16, Affidavit of Rick Spruill, Ex. 17.

they took to form the basis of this belief.[87]  *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S. Ct. 2678, 105 L.Ed.2d 562 (1989)

40.    Even if KRIS could have chosen more precise words in explaining Plaintiff's actions — which is essentially Plaintiff's complaint — poor word choice or an error in judgment cannot demonstrate actual malice.  *Abdel-Hafiz v. ABC, Inc.*, 240 S.W.3d at 519-520.  To prove actual malice, Plaintiff must demonstrate that KRIS knew that its choice of words could create a false impression or that KRIS "purposefully published mistaken facts or that the circumstances were 'so improbable that only a reckless publisher would have made the mistake.'"  *Id.*  Plaintiff has not and cannot provide clear and specific evidence that KRIS acted with actual malice in preparing the broadcasts.

**D.    Plaintiff Suffered No Damages, and Plaintiff is Libel-Proof**

41.    Plaintiff cannot establish damages resulting from the broadcasts at issue.  Before the first broadcast aired, Plaintiff had already been investigated by two prior school districts, TEA and law enforcement on multiple occasions.  He was currently under investigation by West Oso ISD and TEA for sending "inappropriate text messages of a romantic and possibly sexual nature" to a student, and he had been placed on administrative leave.[88]  CCPD had begun a new investigation into him before he was ever identified in a KRIS broadcast.[89]  Plaintiff cannot tie any damages to the broadcasts at issue, as opposed to his own misconduct or other media reports; therefore, he cannot establish an essential element of his claim.[90]  Plaintiff cannot bootstrap damages through his *per se* claim either because to recover on a *per se* claim, the statements must be materially

---

[87] *Id.*
[88] *See* Ex. 11(b).
[89] *See* Ex. 8(a); *see also*, Exs. 8(b) and 8(c).
[90] *See Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809 (Tex. 1976).

false — which they are not.  Plaintiff failed to plead or prove actual damages, special damages[91] or mental anguish damages.[92]  He has acquiesced to the truth of the bulk of the broadcasts at issue, including a criminal confession, sex offender therapy, an arrest for stalking, and being arrested and charged with multiple counts of indecent exposure.  Thus, it would be impossible to measure the incremental reputational harm, if any, caused by Defendants.  Finally, Plaintiff cannot recover exemplary damages because actual malice is required to recover exemplary damages in a libel action,[93] and Defendants did not act with actual malice.[94]

42.     Plaintiff had a criminal record for being a sexual predator spanning at least 13 years and, as a result, is libel-proof with respect to statements about such matters.  These activities became widely known in the community when the police sent out a press release concerning Plaintiff's arrest for stalking and his connection to three indecent exposure cases.  As a result, Plaintiff's reputation for anti-social and/or criminal behavior was so poor it could not have suffered damages from the publication of the Complained of Statements.  In applying the libel-proof plaintiff doctrine, "where there is no reputation it cannot be damaged and without damage to reputation there is no actionable defamation."[95]  In *Finklea*, the Court also recognized the libel-proof plaintiff doctrine when a plaintiff challenges statements that are substantially less damaging to his reputation than other unchallenged statements in the same communication.[96] Here, Plaintiff admits to the vast majority of the investigative series, and to at least three arrests and three other incidents of allegations of inappropriate behavior.  Yet, he takes issues with semantics between being "required" to go to counseling with a sex offender therapist and being

---

[91] *See Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 94 (Tex. App. – Corpus Christi 1992, writ dism'd w.o.j.) (affirming directed verdict against plaintiff for libel *per se* when he failed to plead and prove special damages).
[92] *See* Ex. 4 at p. 8.
[93] *New York Times v. Sullivan*, 376 U.S. 254 (1964).
[94] *See* Exs. 15-17.
[95] *Finklea v. Jacksonville Daily Progress*, 742 S.W.2d at 517.
[96] *Id.* at 516.

"ordered" to do so.[97]   By implicitly conceding the truth of the overwhelmingly derogatory portion of the broadcasts at issue, Plaintiff himself conclusively demonstrates he had no remaining reputation in the topics discussed in the challenged statements.[98]   In looking at the multitude of criminal records and the affidavits from those in the community who were preyed upon by Plaintiff,[99] it is clear Plaintiff had a reputation for being a predator and young women in the community quickly learned to steer clear of him.

> The U.S. Supreme Court has warned that the First Amendment forbids granting defamation plaintiffs 'gratuitous awards of money damages far in excess of any actual injury.'  The trial courts have been cautioned to first establish that a libel claim actually serves the purpose of the libel law which is to redress injury to reputation.  Recognizing that the cost of a successful libel defense against a meritless claim is itself a burden stifling the exercise of First Amendment rights, the Supreme Court has said that judges must independently evaluate libel cases and summarily dispose of illegitimate claims.[100]

## VII.
## DEFENDANTS HAVE ESTABLISHED THEIR AFFIRMATIVE DEFENSES BY A PREPONDERANCE OF THE EVIDENCE

43.    Under the anti-SLAPP statute, the Court must also dismiss the action if the movant establishes, by a preponderance of the evidence, an affirmative defense.[101]  If truth is considered an affirmative defense, rather than an element of the claim — which Defendants do not concede — Defendants still have established the substantial truth of the broadcasts at issue.[102]

## A.    The Statements Concerning Plaintiff were Substantially True

---

[97] *See* Ex. 4, ¶11.

[98] *See, e.g., Simmons Ford, Inc. v. Consumers Union*, 516 F. Supp. 742 (S.D.N.Y. 1981) (Given abysmal performance and safety evaluations detailed in the article, plaintiffs could not expect to gain more than nominal damages based on the addition of the misstatement relating to federal safety standards).

[99] *See* Exs. 5(c), 6, 7, 8, 12, and 18-22.

[100] *Finklea*, 742 S.W.2d at 517; *see also, Hancock v. Variyam*, 400 S.W.3d 59, 64 (Tex. 2013); *citing Gertz v. Welch*, 418 U.S. at 340-42 (internal citations omitted).

[101] Tex. Civ. Prac. & Rem. Code §27.005(d).

[102] *See, e.g., Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 86 (Tex. App. – Hou. [1st Dist.] 2013, pet. filed) (reversing the denial of an anti-SLAPP motion because report on assisted living facility was substantially true); *Avila v. Larrea*, 394 S.W.3d 646, 659 (Tex. App. – Dallas 2012, pet. denied) (reversing the denial of an anti-SLAPP motion because a broadcast was not inaccurate).

22

44.     In applying the substantial truth test, the allegedly defamatory statements must be construed as a whole.  If the underlying facts as to the "gist" of the broadcasts is undisputed, the Court may disregard any variance with respect to items of secondary importance and determine substantial truth as a matter of law.  Furthermore, under the substantial truth doctrine, it is not enough to prove that a stated fact was literally false.  Instead, the plaintiff must show that the statements were *substantially* or *materially* false — meaning the alleged defamatory statement had to have been more damaging to the plaintiff's reputation, in the mind of the average viewer, than a truthful statement would have been.[103]  The gist of Defendants' broadcasts was about a breakdown in educational and law enforcement systems that permitted Plaintiff to resign and be re-employed as a teacher despite previously being investigated for inappropriate behavior with students at several schools, previously undergoing counseling with a sex offender therapist, and being arrested for stalking and indecent exposure.  This is indisputably true.

45.     Plaintiff has admitted the substantial truth of the statements made in the broadcasts.  He admits to being "questioned by law enforcement, arrested and charged for indecent exposure …."[104]  The judicial records substantiate the truth of the statements made in the broadcasts at issue.[105]  And, according to records produced by Plaintiff himself, Plaintiff was mandated to attend six sessions with a sex offender therapist.[106]  These facts are true and undisputable.

46.     The underlying gist of the statements in the broadcasts is true and undisputed, and, under Texas law, "any variance with respect to items of secondary importance" can be disregarded.[107]

---

[103] *McIlvain v. Jacobs*, 794 S.W.2d at 16; *Dolcefino v. Turner*, 987 S.W.2d 100, 109 (Tex. App. – Hou. [14th Dist.] 1998), *aff'd*, 38 S.W.3d 103 (Tex. 2000); *KTRK Television v. Felder*, 950 S.W.2d 100, 105-106 (Tex. App. – Hou. [14th Dist.] 1997, no writ).

[104] *See* Ex. 4, ¶8.

[105] According to records produced by TEA and CCPD, Plaintiff was questioned, arrested, and charged with indecent exposure.  *See* Ex. 8(a); *see also,* Exs. 8(b), 8(c*)* and 11(a).

[106] *See* Ex. 5(c).

[107] *See KTRK v. Felder,* 950 S.W.2d at 105-106; *Rogers v. DMN*, 889 S.W.2d 467 (Tex. App. – Dallas 1994, writ denied); *Simmons v. Ware*, 920 S.W.2d at 448; *Lewis v. A.H. Belo Corp.*, 818 S.W.2d 856 (Tex. App. – Ft. Worth

Given the foregoing, it is readily apparent that Plaintiff cannot provide clear and specific evidence of material falsity as required by law, and Defendants have established substantial truth by a preponderance of the evidence.

**B.     Defendants Were Reporting Ongoing Allegations Which Falls Within the Substantial Truth Doctrine.**

47.     In addition, KRIS was simply reporting on ongoing allegations being made concerning Plaintiff's conduct during his tenure at West Oso ISD and the resulting investigation.  Texas courts have consistently held that a media report about third-party allegations is protected by the substantial truth defense if the report is based on actual third-party complaints that are under investigation.[108]  The media defendant does not need to demonstrate the underlying allegations themselves are substantially true.  There is no doubt that third-party allegations were made about Plaintiff sending inappropriate text messages to a student and that those allegations were being investigated by West Oso ISD, CCPD, the Nueces County District Attorney, and the TEA.  Because the broadcasts accurately reported the allegations being made and the investigations being conducted, they cannot support a claim of defamation, and Plaintiff cannot establish clear and specific evidence of material falsity as required by law.[109]

### VIII.
### EVIDENCE

48.     The pleadings, appendices, and exhibits outlined in Appendix A, as well as all other pleadings on file, are provided as evidence in support of Defendants' Anti-SLAPP motion,

---

1991, writ denied); *Downer v. Amalgamated Meatcutters and Butcher Workmen of N. Am.*, 550 S.W.2d 744, 747 (Tex. Civ. App. – Dallas 1997, writ ref'd n.r.e.); *Delta Air Lines, Inc. v. Norris*, 949 S.W.2d 422, 426 (Tex. App. – Waco 1997, writ denied).

[108] *See, e.g., KTRK v. Felder*, 950 S.W.2d at 105-106 (story was substantially true when defendant accurately reported parents of school children had accused plaintiff, a teacher, of physically threatening and verbally abusing their children); *UTV of San Antonio, Inc. v. Ardmore, Inc.*, 82 S.W.3d 609 (Tex. App. – San Antonio 2002, no pet.). *See ABC v. Gill*, 6 S.W.3d 19 (Tex. App. – San Antonio 1999, pet. denied) (accurate report of RTC investigation is not actionable).

[109] *See* Tex. Civ. Prac. & Rem. Code §27.005(c).

pursuant to Tex. Civ. Prac. & Rem. Code §27.006.  The exhibits listed in Appendix A are attached hereto and incorporated herein for all purposes.

## IX.
## DAMAGES, COSTS, AND SANCTIONS

49.     Texas Civil Practices and Remedies Code §27.009(a)(1) mandates the Court award to the moving party court costs, reasonable attorney's fees, and other expenses incurred in defending against this lawsuit.  In addition, under Tex. Civ. Prac. & Rem. Code §27.009(a)(2), the Court must award sanctions against the party who brought the legal action in an amount "sufficient to deter the party who brought the legal action from bringing similar actions." *Id.*  As Defendants have demonstrated, because Plaintiff cannot meet his burden of establishing, by clear and convincing evidence, the *prima facie* elements of a defamation claim, the Court should award Defendants their costs, fees, and expenses in an amount to be determined.

## X.
## CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiff's defamation claims against Defendants regarding the broadcasts of February 9 and 11, 2014 should be dismissed with prejudice in their entirety and fees, costs, and sanctions, should be awarded against Plaintiff.

WHEREFORE, PREMISES CONSIDERED Defendants pray the Court set this matter for hearing within 60 days, as provided by the Anti-SLAPP statute, or at a later time that can be agreed upon, and that upon hearing, the Court grant this Motion and Dismiss Plaintiff's claims against Defendants with prejudice in its entirety, and award Defendants reasonable costs and attorneys' fees incurred in defending these claims, documentation of which will be submitted within 14 days of the order, and sanctions to deter future similar conduct by Plaintiff, and such other and further relief, at law and in equity, to which Defendants may show themselves justly entitled.

Respectfully submitted,

HAYNES AND BOONE, LLP

By:_____s/ Laura Lee Prather_____
        Laura Lee Prather
        Texas State Bar No. 16234200
        Southern District ID No. 15442
        Attorney-in-Charge
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Tel.: (512) 867-8400
Fax.: (512) 867-8470

OF COUNSEL:
Catherine Lewis Robb
Southern District ID No. 737064
Texas State Bar No. 24007924
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:     (512) 867-8400
Telecopier:    (512) 867-8470

Thomas J. Williams
Southern District ID No. 14013
Texas State Bar No. 21578500
201 Main Street, Suite 2200
Fort Worth, Texas  76102
Telephone:     (817) 347-6600
Telecopier:    (817) 347-6650

**ATTORNEYS FOR DEFENDANTS**

**<u>CERTIFICATE OF CONFERENCE</u>**

I certify that on the 4th day of April, 2014, I left a message with the office of Jon Brooks, and he has not returned my message as to whether he opposes this Motion to Dismiss.

:_____/s/ Laura Lee Prather_____
        Laura Lee Prather

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.5A, Defendants request oral argument on this Motion to Dismiss within 60 days pursuant to statutory requirement.

:_____/s/ Laura Lee Prather_____
Laura Lee Prather

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of April, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following attorneys:

Jon D. Brooks
Brooks, LLP
400 Mann Street, Suite 1001
Corpus Christi, TX  78401

_____/s/ Laura Lee Prather_____
Laura Lee Prather
Catherine Lewis Robb