UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| CHRISTOPHER WILLIAMS, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:13-CV-124 |
| § | |
| CORDILLERA COMMUNICATIONS, § | |
| INC., *et al*, § | |
| § | |
| Defendants. § | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Before the Court in this defamation case are cross-motions for summary judgment. Plaintiff Christopher Williams' (Williams') motion (D.E. 39) seeks partial summary judgment against Defendants Cordillera Communications, Inc., KVOA Communications, Inc. d/b/a KRIS Communications (collectively as the singular KRIS) on their substantial truth and privilege defenses. KRIS's motion (D.E. 41) seeks a partial summary judgment against Williams on its truth/substantial truth and privilege defenses, as well as arguing that Williams is a public figure and that Williams' reputation is such that he is libel-proof, suffering no damages. The Court held a hearing on the motions on June 3, 2014, and addressed Plaintiff's objections to Defendants' evidence on the record. For the reasons set out below, Williams' motion (D.E. 39) is DENIED and KRIS's motion (D.E. 41) is GRANTED.

## THE CLAIMS BETWEEN WILLIAMS AND KRIS

Williams originally filed suit against KRIS on April 4, 2013, in the 319th Judicial District Court of Nueces County, Texas. The case was removed to this Court pursuant to diversity jurisdiction, 28 U.S.C. § 1332. According to his Second Amended Complaint (D.E. 40), Williams bases his defamation claims on the following statements made by KRIS in its broadcasts or on its Facebook page or other social media:

- In 2013:
    - That Williams "pled to a lesser charge" with respect to an incident involving allegations that he made phone calls to a woman in Austin that "were sexual in nature;"
    - That Williams had "one conviction" with respect to the telephone harassment charge that was of a "sexual nature;" and
    - That Williams was connected to alleged indecent exposure cases in 2008.
- In 2014:
    - That Williams was arrested for offenses involving "indecent exposure" and "masturbating in front of Texas A&M coeds;" and
    - That Williams was "ordered by a judge" in 2005 to mandatory counseling.

Only the 2013 statements are at issue in the pending summary judgment motions.

Williams seeks partial summary judgment on KRIS's substantial truth and privilege defenses regarding the 2013 statements. KRIS seeks partial summary judgment that the statements were literally or substantially true, that they were privileged and published without actual malice, that Williams is a public official or public figure who cannot be defamed without proof of actual malice, and that Williams is libel-proof and has suffered no damages.

## FACTS

### A. The Telephone Harassment Charge

A probable cause affidavit signed on September 21, 2005, indicates that a female victim reported unwanted telephone calls to her cell phone for two months, described as "sexual with moans and groans." D.E. 41-9, p. 3. The calls were generally in the middle of the night and were sometimes as frequent as five calls in a ten-minute period of time. The male caller eventually started to use the victim's first name, called her "baby," and said something about "ass." *Id*.

The caller's telephone number was traced to a wireless contract on which Williams' uncle was the subscriber. When contacted, the uncle indicated that the cell phone's user was Williams. After being called by police who were investigating, Williams admitted, on tape, that he made the calls to the victim. *Id*. *See also*, D.E. 41-11, pp. 20-21, 34-35; D.E. 42.

The arrest warrant was issued on September 21, 2005, on the charge of harassment, a Class B misdemeanor. D.E. 41-9, p. 6. A complaint accused Williams of

engaging, on May 15, 2005, in repeated communications to the victim with the intent to harass, annoy, alarm, abuse, torment, and embarrass the victim, including causing her phone to ring and breathing heavily into the phone and moaning.  D.E. 41-9, p. 12.

Pursuant to a motion to dismiss granted on July 20, 2006, the criminal action was dismissed because Williams entered into a 2-year deferred prosecution agreement.  D.E. 39-3.  This agreement (D.E. 41-7, pp. 2-8) included Williams' written confession to the charge of telephone harassment on May 15, 2005, and his agreement to: (1) refrain from contact with the victim; (2) pay $795.00 in restitution; and (3) complete six therapy sessions with a sex offender therapist.  If Williams failed to perform any part of the agreement, he further agreed that the prosecution of the case could proceed, he would plead guilty or no contest to the charge, and his confession and other evidence against him would be admissible.  Below his signature on the agreement is his signature following "I plead guilty/no contest to the offense(s) of Telephone Harassment.  My plea is given freely and voluntarily."  D.E. 41-7, p. 8.  There is no evidence that Williams failed to comply with the deferred prosecution agreement or that there was a later prosecution of the charge.

### B. The Indecent Exposure Charges

According to one victim who knew Williams because he dated an athletic trainer at Texas A&M University-Corpus Christi, he appeared on the patio outside the sliding glass door of her apartment on October 31, 2008, masturbating.  When she and her roommate screamed, he left.  D.E. 41-24.  Williams appeared two more times the following month at the same place, looking in at the victim.  *Id*.  The incidents were

reported to the police.  *Id*.  There is no evidence in the record regarding any formal charges resulting from this incident.

On November 11, 2008, a black male was reported to have entered a woman's apartment and exposed himself.  D.E. 41-12, pp. 27-29.  When the woman screamed, he ran out.  The incident took place in the same vicinity as the other indecent exposure incidents of record.  However, there is no evidence that Williams was the perpetrator or that any charges were filed against him.

By complaint dated March 24, 2009, Williams was charged and arrested in a separate incident occurring on November 14, 2008.  The charge was indecent exposure and masturbating in the presence of a victim and a witness.  D.E. 41-23, pp. 12-13.  According to evidence presented at a hearing on Williams' motion to suppress in connection with this charge, there had been three reports of indecent exposure or a peeping Tom that occurred in the same part of Corpus Christi with sufficient similarities to make police officers believe that the crimes were perpetrated by the same person.  D.E. 41-7.  The victim and witness in this case had been presented with a photo lineup and they both identified Williams as the perpetrator.  *Id*.  But when the victim testified in court, she stated that although she believed Williams was the perpetrator, she had looked only briefly at the man that she saw masturbating near her apartment so she was not willing to identify him with 100% certainty.  *Id*.

This charge of indecent exposure was dismissed because "The victims could not say ***definitely*** that they were ***certain*** that the Defendant was the same person who

exposed himself to them." D.E. 41-8, p. 22 (emphasis in original). The dismissal order was signed on June 14, 2010. *Id.*

### C. The West Oso ISD Action

On January 14, 2013, a West Oso ISD student made allegations that Williams had engaged in inappropriate text messages with her and that those messages were possibly sexual in nature. D.E. 41-20, pp. 27-28, 31. That same day, West Oso ISD sent Williams a letter placing him on administrative leave with pay pending an investigation. D.E. 41-20, p. 36. On February 4, 2013, the West Oso ISD school board voted to initiate termination of Williams' employment contract. D.E. 41-7, p. 36. Thereafter, the matter was referred to the Texas Education Agency for an investigation. D.E. 41-8, p. 2. Williams appealed the termination recommendation and on March 27, 2013, West Oso ISD entered into a settlement agreement regarding Williams' employment, allowing him to resign. D.E. 41-8, pp. 4-5, 28.

### D. The News Reports

In connection with coverage of the West Oso ISD controversy, on January 28, 2013, KRIS aired a report in its 5:00 p.m. broadcast that Williams had been arrested in 2005 on a Travis County warrant and that he was "charged with harassment for making inappropriate phone calls to a woman that were sexual in nature. The documents also say that Williams admitted to making the calls. Police say Williams pled to a lesser charge, and received two years' deferred prosecution in the case." D.E. 41-3, p. 4. In its 6:00, 9:00, and 10:00 p.m. broadcasts, KRIS essentially repeated the story with a few more details, stating that Williams "admitted on tape that he made the calls." *Id.*, pp. 7, 9. The

next day, KRIS again reported this story twice in its 5:00 a.m. broadcast. Later that day, in follow-up stories aired at 6:00, 9:00, and 10:00 p.m., KRIS stated that "an e-mail from Corpus Christi Police . . . says Christopher Williams has been accused of indecent exposure in the past. . . . [D]etectives linked Williams to three separate cases in 2008, where women reported that a man had exposed himself to them." D.E. 41-3, p. 16, 18, 19.

On February 4, 2013, at 5:00 and 6:00 p.m., KRIS again reported that Williams had been arrested in 2005 on a harassment charge, he pled guilty to a lesser charge, and received two years deferred prosecution in that case. D.E. 41-3, p. 26; 41-4, p. 1. In connection with the 2008 indecent exposure charges, KRIS reported that it found no records of a conviction, but that a CCISD letter to Williams discusses the arrest and prohibits him from coming onto any CCISD property. D.E. 41-3, p. 27; 41-4, p. 2. KRIS also stated that private investigators, who had been hired in another incident in 2010 revealed that Williams had begun the process to expunge his arrest records. D.E. 41-3, p. 27; 41-4, pp. 2-3.

At 10:00 p.m., after the West Oso ISD school board met and voted to terminate Williams' employment, KRIS reported that "Williams' name has come up in at least four other incidents going back to 2005, including two arrests but only one conviction." D.E. 41-4, p. 8. This story was essentially repeated February 5, 2013, twice in the 5:00 a.m. broadcast and again at noon. The summary of "at least four other incidents going back to 2005, including two arrests, but only one conviction" was again aired on February 28, 2013, at 5:00 and 6:00 p.m.

## DISCUSSION

### A. Truth/Substantial Truth

KRIS claims that its statements are true or substantially true, and relies on the defense offered by TEX. CIV. PRAC. & REM. CODE § 73.005.[1]  D.E. 53, p. 8; D.E. 24, p. 6. The law does not expose the press to liability for truthfully publishing information of public interest.  *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 496 (1975).  Truth or substantial truth is a complete defense to a defamation claim.  *E.g.*, *Grotti v. Belo Corp*. 188 S.W.3d 768, 775 (Tex. App.—Fort Worth 2006, pet. denied).

As a plaintiff and as a summary judgment movant with respect to claims against a media defendant reporting on a matter of public concern, Williams bears the burden of demonstrating the material falsity of the statements.  *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013).  Likewise, to the extent that KRIS has filed its own motion for summary judgment, it bears the burden of showing that there is no disputed issue of material fact regarding the truth or substantial truth of the challenged statements.  FED. R. CIV. P. 56(a).

The question whether a statement is materially false or substantially true turns on whether the statement is more damaging to Williams' reputation, in the mind of the average listener, than a truthful statement would have been.  *E.g.*, *McIlvain v. Jacobs*, 794 S.W.2d 14, 15-16 (Tex. 1990); *KTRK Television v. Felder*, 950 S.W.2d 100, 105-06

---

[1] Pursuant to the Texas statute, "The truth of the statement in the publication on which an action for libel is based is a defense to the action."  TEX. CIV. PRAC. & REM. CODE § 73.005.  While there are allegations that KRIS published certain statements on its website or other social media, Williams has not offered any evidence of a publication in written or graphic form of a defamatory statement.

(Tex. App.—Houston [14th Dist.] 1997, no writ). A statement is substantially true if it conveys the same "gist" as the literal truth even if it errs in the details. *McIlvain, supra* at 16. *Turner v. KTRK Television*, 38 S.W.3d 103, 115 (Tex. 2000).

A statement's defamatory meaning is determined "from the perspective of an ordinary reader in light of the surrounding circumstances." *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013). The "ordinary person" is a legal construct based upon a person who "exercised ordinary care and prudence, but not omniscience, when evaluating allegedly defamatory communications." *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 157 (Tex. 2004). At issue is the sensibility of an average person, not one trained in the law. *Turner, supra* at 114 (citing *Kapellas v. Kofman*, 1 Cal.3d 20, 81 Cal.Rptr. 360, 459 P.2d 912 (1969) (*en banc*)).

Truth or substantial truth is a question of law where the underlying facts are undisputed. *McIlvain, supra* at 16. As will be demonstrated more fully below[2], the relevant facts are not disputed. KRIS's broadcasts have been transcribed and are part of the record. The police, school, and court records that establish Williams' history with respect to allegations of wrongdoing as well as some of his employment records have been offered into evidence and there is no dispute as to their authenticity. To the extent that Williams has offered affidavit testimony, any discrepancies between the testimony and the documentary evidence appears to be a matter of interpretation of questions of law rather than a question of fact for a jury. To the extent that KRIS employees have offered

---

[2] As summary judgment movants, both parties assert that the facts relevant to their respective claims are undisputed. D.E. 39, p. 4; D.E. 41, p. 6-9. The Court has not identified any disputed issues of material fact in the evidence.

affidavit testimony, the relevant facts contained therein that are related to their investigation are uncontroverted. The Court thus determines the question of truth or substantial truth as a matter of law.

### 1. Whether it is true or substantially true that Williams "pled to a lesser charge" with respect to an incident involving allegations that he made phone calls to a woman in Austin that "were sexual in nature."

First is the question of the truth of the assertion that Williams entered a plea regarding the telephone harassment charge or a lesser charge for conduct of a sexual nature in 2005. There is no question that the charge against Williams involved conduct of a sexual nature. The victim reported heavy breathing, moaning, being addressed as "baby," and there was a reference to "ass." The same information was included in the probable cause affidavit, and heavy breathing and moaning were included in the language of the criminal information and complaint. Moreover, part of Williams' deferred prosecution agreement was that he attend six sessions of sex offender therapy.

The charge against Williams was not a "sex crime,"[3] and KRIS did not report that it was. The language in the KRIS broadcasts tracked the information provided in the probable cause affidavit and the charge—that the telephone calls were "of a sexual nature" and involved moaning. Williams' claim that KRIS reported these matters as "sex crimes" is contrary to the evidence. This part of Williams' defamation claim involves statements that were true or substantially true.

---

[3] According to the TEXAS PENAL CODE, chapter 21, "sexual offenses" include sexual abuse of a child, public lewdness, indecent exposure, indecency with a child, improper relationship between educator and student, and improper photography or visual recording.

The other aspect of this complaint is the statement that Williams pled to a lesser charge.  Williams entered into a deferred prosecution agreement, which served as the basis for the dismissal of the charge.  Williams' agreement contains his confession to the crime.  In addition, the document contains a written and signed "Plea of Guilty or No Contest" to be used in the event that he did not fully perform the agreement.  The truth is that Williams confessed guilt and signed a written plea of guilty/no contest to the charge of telephone harassment.  As a result, Williams was required to stay away from the victim, pay restitution, and attend therapy with a sex offender therapist.

The Court finds that an ordinary viewer would not find the truth to be less damaging to Williams' reputation than KRIS's broadcast referencing a plea of guilty to the crime charged or a lesser crime.  Whether guilt is confessed or guilt is pled, the reputation-damaging fact is being guilty of the crime.  The statement is therefore substantially true with respect to the matter of pleading to a lesser crime.

The Court finds that the first 2013 broadcast statement that Williams complains of is true or substantially true.

### 2. Whether it is true or substantially true that Williams had "one conviction" with respect to the telephone harassment charge that was of a "sexual nature."

The second statement references Williams being convicted of a crime that was sexual in nature.  As discussed above, the fact that the charge was for conduct "of a sexual nature" is true or substantially true.  The fact that Williams was convicted of the crime is not true.

Williams confessed, in writing, to telephone harassment, and he stipulated to the admissibility of the confession and other evidence against him if he failed to comply with the deferred prosecution agreement. Additionally, the record reflects that even before the negotiation of the deferred prosecution agreement, Williams—on tape—orally confessed to police that he had committed the crime. The terms of the deferred prosecution agreement were punitive, requiring him to stay away from the victim, pay restitution, and obtain therapy from a sex offender therapist.

While Williams was not convicted of a crime, he confessed to the crime and was punished for it. The damaging issue in the mind of an ordinary viewer with respect to Williams' reputation is guilt and KRIS's statement that Williams had been convicted did not carry a heavier sting than the truth of his confessed guilt. The statement that he was convicted was substantially true.

The Court finds that the second 2013 broadcast statement that Williams complains of is substantially true.

### 3. Whether it is true or substantially true that Williams was connected to alleged indecent exposure cases in 2008.

Williams complains of the report that he had been connected with indecent exposure cases that occurred in 2008. As set out above, the following incidents are at issue:

> i. October 31, 2008. A black man appeared on the victim's back patio and masturbated in front of her, later peeping in through her windows. The victim reported that she knew it was Williams because he had dated someone she knew.

   ii. November 11, 2008. A black man entered the victim's apartment and exposed himself.

   iii. November 14, 2008. A black man was sitting on apartment steps masturbating in front of a victim and a witness. The record reflects that Williams was arrested in 2009 and charged with indecent exposure for this incident. While this charge was dismissed, it is true that he was arrested on the charge, he was accused of the offense, and he was identified by the victim and a witness in a photographic lineup.

All of these events qualify as incidents of indecent exposure. Detectives testified in connection with the November 14, 2008 charge that they believed that Williams was the perpetrator in all of those 2008 complaints. The Corpus Christi Police Department also issued a press release to members of the media informing them that three cases of indecent exposure had been filed against Williams based on detectives connecting Williams to each of the incidents. D.E. 41-13, p. 25.

  The statements KRIS broadcast regarding Williams having been connected to these indecent exposures were true. The fact that police made the connection can be published even if the investigation is not completed; charges do not have to be fully adjudicated before they can be published. *See, KTRK Television v. Felder*, 950 S.W.2d 100, 106 (Tex. App.—Houston [14th Dist.] 1997, no writ).

  Williams argues that the KRIS reports were untrue because the indecent exposure charge arising from the November 14, 2008 incident was dismissed in a manner equivalent to an acquittal. He states that he "was entirely and without qualification ruled out as the perpetrator of those offenses when the charges were voluntarily dismissed because the alleged victim(s) could not identify [him] as the perpetrator." D.E. 48, p. 35.

This mischaracterizes the victim's testimony and the dismissal. The victim identified Williams as the perpetrator in a photo lineup and maintained the opinion that he was the perpetrator at the hearing on Williams' motion to suppress. However, she was uncomfortable stating that she was certain to a 100% degree. Williams was not acquitted—there was no finding that Williams was not guilty. The fact that the charges were dismissed because of the victim's equivocation in her identification does not change the fact that the Williams was arrested and charged with indecent exposure, which is what KRIS reported.

Williams further contends that the expunction of records effectively eliminates all evidence that the charge was made. While Williams claims that all records were expunged, there is no such order before the Court, and records have been found and admitted into evidence. Even if the official records are expunged, any other evidence of the charges—official or unofficial—that was uncovered and disclosed in KRIS reports is not rendered false.

The Court finds that the third 2013 broadcast statement that Williams complains of is true or substantially true. The Court thus GRANTS KRIS's motion for partial summary judgment that the 2013 statements are true or substantially true. Consequently, the Court DENIES Williams' motion seeking partial summary judgment that the statements were not true or substantially true but were materially false.

### B. Fair Report/Fair Comment Privilege

KRIS pled the defense that its reports about Williams were a fair and accurate report on statements made and information provided by third parties regarding

newsworthy matters of public concern. D.E. 53, pp. 8-9; D.E. 24, p. 6. Its defense invokes TEX. CIV. PRAC. & REM. CODE § 73.002. D.E. 53, pp. 8-9; D.E. 24, pp. 6-7.

Speech concerning matters of public interest is protected by the First and Fourteenth Amendments to the United States Constitution, Article 1, Section 8 of the Texas Constitution, and Chapter 73 of the Texas Civil Practice and Remedies Code. The press is afforded the privilege of publishing statements based on official records so long as they do so fairly. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 491-96 (1975) (determining that when a matter is part of a public record the right to privacy fades). KRIS has demonstrated that its reporting was done on the basis of records obtained from police departments, schools, the Texas Education Agency, and courts. The only statement that did not track the material in those records is the reference to Williams having been "convicted" of telephone harassment in 2005.

According to Hollis Grizzard, Jr., the KRIS acting News Director, an unnamed Assistant District Attorney of Travis County described the disposition of the telephone harassment charge as Williams pleading to a lesser offense, which the attorney still considered a conviction. D.E. 41-29, p. 3. This portion of Grizzard's affidavit is not admissible for the truth of the matter asserted: that the deferred prosecution agreement amounted to Williams pleading to a lesser charge, and thus he was "convicted" of an offense. However, it is admissible to show the source that Grizzard, in good faith, relied on. KRIS is entitled to the fair reporting privilege because the matters were a fair communication of the contents of public records and the statements of public officials.

The KRIS employees involved in the reports have testified about the investigation they made and their reliance on official records, all of which supports the good faith nature of their reporting, which the Court has determined was true or substantially true. *See* Exhibits 22-25. The privilege protects KRIS's reporting of the public matters. The Court GRANTS the KRIS motion and holds that the KRIS reports are subject to the fair report/fair comment privilege. Consequently, the Court DENIES Williams' motion seeking a judgment that the fair reporting privilege is eliminated as a defense for KRIS.

## CONCLUSION

Because Williams' claims can be disposed of on the basis of the Court's determination of the issues of truth/substantial truth and fair reporting privilege, the Court declines to address the additional issues of public figure privilege and damages. For the reasons set forth above, the motion for partial summary judgment filed by KRIS (D.E. 41) is GRANTED. The motion for partial summary judgment filed by Williams (D.E. 39) is DENIED.

ORDERED this 11th day of June, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE